OPINION OF THE COURT
Harold Tompkins, J.
The nature of the hearing required under New York State’s Sex Offender Registration Act (Correction Law § 168 et seq.) is the issue before this court. It arises in the context of defendant James Ross’ challenge to the Board of Examiners’ recommendation that Mr. Ross be classified as a level-three sex offender. This is the first case interpreting New York’s new Sex Offender Registration Act.
the sex offender statute
Article 6-C of the Correction Law (§§ 168 — 168-v [L 1995, ch 192]) was adopted on July 25, 1995 and became effective on *309 January 26, 1996. This statute is New York State’s version of "Megan’s Law” adopted in memory of 7-year-old Megan Kanka, who was abducted, sexually assaulted and murdered in July 1994 by a sex offender with a history of numerous prior sexual offenses who lived across the street. The law establishes a system requiring sexual offenders to register with appropriate governmental authorities. Every State requires sex offenders to register and notify law enforcement officials of appropriate information such as address and employment.[1]
The Federal Violent Crime Control and Law Enforcement Act of 1994 requires States to register and track convicted sex offenders for 10 years after release and to notify law enforcement officials in the local community to obtain full Federal financing provided in that law (42 USC § 14071 et seq.). Recently, this statute was amended to require release of relevant information necessary to protect the public or community notification (Pub L 104-145). A majority of States *310 require notification to the community or access by the public to information on convicted sex offenders. A prime purpose is to allow parents the knowledge as to convicted sex offenders in their neighborhood so they can take appropriate safeguards for their children. The constitutionality of applying community notification retroactively is currently unsettled. Judge Chin enjoined enforcement of the community notification portions of New York’s law, but permitted registration to continue (Doe v Pataki, 919 F Supp 691 [SD NY 1996]).
New York’s statute establishes a Board of Examiners of Sex Offenders (Correction Law § 168-Z). The Board reviews each case to determine whether the individual is a sex offender and assess a risk classification based upon the likelihood of future offenses and the threat to the community for notification purposes. Offenders must register periodically and on any relocation or other change in condition. Failure to register is a class A misdemeanor for a first offense and a class D felony for subsequent offenses. It may also be considered a violation of parole.
The law establishes three levels of community notification or public access. A level-one designation is the lowest level and provides for information to be given only to the enforcement agencies having jurisdiction over the individual. A level-two or moderate designation authorizes the law enforcement agencies to disseminate relevant information including approximate address, photograph, background of the crime, type of victim to entities with vulnerable populations. For the level-three, high risk category, the law enforcement entities may provide the offender’s exact address, photograph, background information to any entity with vulnerable populations and also provide the information to a directory available at local police stations. Members of the public can call a "900” telephone number to ascertain whether a specific named individual is listed and obtain information on him.
A person classified as a sex offender may challenge his determination and the classification level recommended by the Board of Sex Offenders (Correction Law §§ 168-h, 168-o). The court may review any victim’s statement. The offender has the right to appear, be heard and have counsel appointed. The nature of this hearing is the issue presented in this matter.
LEGISLATIVE HISTORY
The court has obtained the Bill Jacket of 68 pages for chapter 192 of the Laws of 1995. It also reviewed the Senate Debate *311 transcript of 106 pages and the Assembly Debate transcript of. 132 pages.[2] The primary purpose of the statute is to provide parents and communities with information as to potential risks from convicted sex offenders.
The legislative debate centered on safety risks to children if community notification was not enacted and concerns of vigilantism by opponents of the legislation. By adopting the bill, the Legislature expressed its belief that the law was a regulatory mechanism to supervise individuals rather than a punitive measure. In providing for a court review of the Board of Sex Offenders’ recommendation, the bill’s sponsor, Senator Skelos, noted (Senate Debate, at 6631-6633) that the sentencing court would review the Board’s recommendation and that there would be a "fully litigated opportunity to resolve factual issues or legal issues” (op. cit., at 6632).
THE HEARING
The Board identifies the risk of a repeat offense by considering the offender’s conduct, including drug or alcohol use, age of the victim, age of the offender, relationship between the offender and victim, if any, number of victims, use of a weapon or the infliction of serious bodily injury, psychological profile of the offender, the response to treatment, recent behavior and any other factors it considers appropriate. The Board evaluates these factors and determines the appropriate risk category. The offender is notified of the assessment and the factors considered and relied upon by the Board.
The offender who wishes to challenge this assessment is in the position of bringing forth evidence to controvert the Board’s finding. If the Board finds, for example, that the offender’s recent behavior was poor and his psychological profile indicates a lack of remorse, the offender has been given notice that the Board relied on these factors and his opportunity to be heard requires him to present evidence to controvert the Board’s finding. Due process requires that the offender be given notice of the proposed classification, the basis for the Board’s determination and an opportunity to present evidence at the determinative hearing (see, e.g., People v Recor, 209.AD2d 831 [3d Dept 1994]; People ex rel. Scherz v Dennison, 209 AD2d 200 [1st Dept 1994]). The statute does not specify any requirements and therefore only the constitutional requirements of due process, *312 notice and an opportunity to be heard are mandated (see, People ex rel. Scherz v Dennison, supra). In contesting these findings, the person who challenges them should have the burden of proof since he is in the best position to bring forth evidence controverting the Board’s recommendations (see, People v Patterson, 39 NY2d 288, 305 [1976] [Breitel, J., concurring], affd 432 US 197 [1977]; People v Esquivel, 158 Misc 2d 720 [Sup Ct, NY County 1993]). This posttrial, postconviction hearing is not for adjudicating guilt but rather for supervising released offenders (see, e.g., People v Minard, 161 AD2d 607 [2d Dept 1990]). It is an administrative function and the court should therefore review the Board’s recommendations only for arbitrariness and capriciousness and otherwise uphold them (see, Siegel, NY Prac § 561 [2d ed]; Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974]).
PROCEDURAL HISTORY
In this case, Ross was indicted for rape in the first degree. On July 23, 1993, he pleaded guilty to attempted rape in the first degree. He was sentenced to an agreed term of incarceration of l1/2 years to 41/2 years. He was released on February 13, 1996. On March 20, 1996, the Board of Sex Offenders evaluated the statutory factors. It noted the risk factors included that defendant’s conviction involved a stranger, that two victims between the ages of 11 and 16 years old were involved, the defendant was armed with a dangerous instrument, that intercourse occurred and that the victims were incapacitated. The Board classified Mr. Ross as a high risk, level-three sex offender and on April 8, 1996, it notified him of this recommendation and advised him that the matter would appear in court on April 30, 1996. On April 30, 1996, Mr. Ross appeared and stated that he contested the recommendation. In accordance with Correction Law § 168-n (3), the court appointed counsel for Mr. Ross at his request and adjourned the hearing for May 14, 1996.
On May 14, 1996, the District Attorney’s Office appeared on behalf of the Board of Sex Offenders to defend the recommendation. Mr. Ross’ counsel sought an adjournment to evaluate the facts and determine whether he would challenge the statute and/or whether he would challenge the Board’s assessment. The court adjourned the matter to June 18, 1996 and on June 18, 1996 the hearing was adjourned on consent to July 2, 1996.
On July 2, 1996, the court heard argument from both counsel on the statute. Mr. Ross has not put forth any evidence to *313 rebut the Board’s findings and recommendation. There is evidence supporting the Board’s recommendation in the record. The court therefore confirms the Board’s recommendation and determines that James Ross is a level-three sex offender.

. Every State has adopted sex-offender registration statutes. (Ala Code § 13A-11-200 [1994]; Alaska Stat §§ 12.63.010, 18.65.087 [1994]; Ariz Rev Stat Annot §§ 13-3821, 41-1750 [B] [1995]; Ark Code Annot § 12-12-901 [Michie 1994] ; Cal Penal Code §§ 290.1-290.7 [West 1995]; Colo Rev Stat Annot § 18-3-412.5 [West 1995]; Conn Gen Stat § 54-102r [1995]; Del Code Annot, tit 11, § 4120 [1994]; Fla Stat ch 775.21 [1995]; Ga Code Annot § 42-9-44.1 [Michie 1995] ; Haw Rev Stat § 707-743 [1995]; Idaho Code §§ 18-8301 — 18-8311 [1995]; 111 Rev Stat, ch 730, para 150/1 [1995]; Ind Code §§ 5-2-12-1 — 5-2-12-12 [1995]; Iowa Code Annot §§ 692A.1-692A.13; Kan Stat Annot §§ 22-4902 — 22-4909 [1995]; Ky Rev Stat Annot § 17.510 [Baldwin 1995]; La Rev Stat Annot §§ 15.540-15.549 [1995]; Me Rev Stat Annot, tit 34-A, §§ 11003, 11004 [West 1994]; Mass Gen Laws, ch 22C, § 37 [1995]; Md Code Annot, Crim Law § 27-692B [1995]; Mich Comp Laws § 28.721 [1995]; Minn Stat § 243.166 [1995]; Miss Code Annot § 45-33-1 [1995]; Mo Rev Stat Annot § 566.600 [1995]; Mont Code Annot §§ 46-23-501 — 46-23-507 [1994]; Neb Laws LB 645 [1996]; Nev Rev Stat §§ 207.151-207.157 [1993]; NH Rev Stat § 632-A:12 [1994]; NJ Rev Stat §§ 20:7-1 — 2C:7-5 [1995]; NM Stat Annot §§ 29-11A-1 — 29-11A-8 [1996]; NC Gen Stat §§ 14-208.5 — 14-208.13 [1995]; ND Cent Code § 12.1-32-15 [1993]; Ohio Rev Code Annot § 2950.01 [Baldwin 1995]; Okla Stat, tit 57, §§ 581 — 587 [1995]; Ore Rev Stat §§ 181.586, 181.595 [1994]; Pa Cons Stat Annot § 42-9791 [1995]; RI Gen Laws § 11-37-16 [1994]; SC Code Annot § 23-3-400 [1995]; SD Codified Laws Annot §§ 22-22-30 — 22-22-39 [1995]; Tenn Code Annot §§ 40-39-101 — 40-39-108 [1994]; Tex Civ Stat Code Annot § 4413 [51] [West 1995]; Utah Code Annot § 77-27-21.5 [1994]; Va Code Annot §§ 19.2-298.1 — 19.2-298.3, 19.2-390.1 [Michie 1995]; Vt Stat Annot § 13-5401 [1996]; Wash Rev Code An-not §§ 9A.44.130, 4.24.550 [1995]; W Va Code §§ 61-8F-1 — 61-8F-8 [1994]; Wis Stat Annot § 175.45 [1995]; Wyo Stat § 7-19-301 [1995].)
Of these, the following States provide, in their statutes, some form of community notification: Alaska, Arizona, California, Connecticut, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Maine, Montana, Nevada, New Jersey, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Virginia, and Washington.

. Copies of the legislative history have been placed in the court file so it is accessible to members of the Bench and Bar.