OPINION OF THE COURT
Steven W. Brockett, J.
The defendant moved pursuant to CPL 170.30 and 170.35 for an order dismissing an accusatory instrument charging criminal contempt in the second degree (Penal Law § 215.50 [3]). The criminal contempt charge was based on an alleged violation of an order of protection issued by the Town of Wallkill Court. The defendant asserted that the order of protection, issued pursuant to CPL 530.13, was invalid, requiring dismissal of the criminal contempt charge. The People opposed the defendant’s motion. In an oral decision, this court granted the defendant’s motion to dismiss. This decision and order sets forth my reasoning.
Factual Background
The events leading up to the filing of the criminal contempt charge began on March 6, 2012, when the Town of Wallkill police received a telephone call from an employee of an agency assisting senior citizens. The employee voiced concerns regarding the welfare of the defendant and a large number of dogs then living on her property. The police investigated and found that the defendant lived at the premises with approximately 70 dogs. Later that day a town justice issued a search warrant targeting the defendant’s home and surrounding property. The warrant was executed by police officers who seized evidence, including two dogs. The defendant was also served with a notice to comply that informed her of numerous potential violations of Agriculture and Markets Law provisions dealing with the care and shelter of her dogs. The notice gave the defendant one week to address the animals’ living conditions. The town police inspected the defendant’s property on March 16 and April 13, 2012 and claim that she failed to adequately correct the issues raised in the notice to comply.
On April 29, 2012, a town justice issued a search warrant and seizure and impoundment order. The warrant permitted the town police to seize evidence and seize or impound certain dogs. The warrant also permitted county sheriffs, the town veterinarian and building inspector, members of the local humane society and an animal rescue group, employees of the county adult protective services agency and members of the local volunteer *616 ambulance corp to assist in the execution of the warrant and seizure order. The order further permitted members of the animal rescue group — “the Mountain Rotty Rescue organization and their agents” — to enter the defendant’s property and home during designated hours over the next 30 days to assist with the medical treatment, feeding and care of the remaining dogs. The warrant was executed the following day and the police seized evidence, including 21 dogs. Fifty-two dogs remained on the property.
During the execution of the warrant on April 30, the defendant was arrested and charged with two counts of animal cruelty (Agriculture and Markets Law § 353) relating to the dogs seized on March 6. The defendant was arraigned, released on her own recognizance and directed to return to court on May 29.
Over the next three weeks, a town justice issued five additional orders directing the seizure of various dogs, placing limits on the defendant’s interaction with the remaining dogs, and continuing the authorization to the Mountain Rotty Rescue organization to enter defendant’s property and home to care for the animals. The final order, issued May 16, 2012, directed the seizure of all dogs remaining on the defendant’s property within 30 days and extended the care authorization to Mountain Rotty Rescue until the seizure was completed. Over the next 10 days, 36 dogs were seized pursuant to the court order, leaving 13 dogs on the defendant’s property.
On May 29, 2012, the defendant appeared in town court on the two animal cruelty counts. At that time, the District Attorney’s Office filed a 150-count superceding information charging the defendant with 11 misdemeanors under Agriculture and Markets Law § 353 and multiple violations under Agriculture and Markets Law § 353-b and the town code. The defendant was arraigned and, pursuant to CPL 530.13, a temporary order of protection was issued against the defendant and in favor of members of the various animal rescue groups that were caring for the remaining dogs pursuant to the town court orders. The next day, the defendant allegedly violated the order of protection and she was charged with criminal contempt in the second degree (Penal Law § 215.50 [3]).
Both the criminal contempt charge and the superceding information were transferred to Middletown City Court following the recusal of the Town of Wallkill justices. The defendant subsequently moved to dismiss the criminal contempt charge.
*617 Decision
The temporary order of protection, issued on May 29, 2012 pursuant to CPL 530.13, directed the defendant to refrain from committing a variety of threatening, offensive or illegal acts toward and to stay at least 50 feet away from the protected parties. The protected parties were identified as “Members of the Mountain Rotty Rescue Group, their agents, or members of other Humane Societies or like agencies who are presently assisting members of the Mountain Rotty Rescue participating in and assisting with the maintenance and care of dogs which are located on [the defendant’s] property.”
The misdemeanor information charging criminal contempt alleged that on May 30, 2012, the defendant violated the lawful mandate of the court, as contained in the order of protection, by coming within five feet of two workers caring for the defendant’s dogs and yelling at the workers.
The defendant moved to dismiss, arguing that the information along with the accompanying supporting depositions and the order of protection failed to set forth a prima facie case as required by CPL 100.40 (1) (c). This statute requires that the information, along with the accompanying supporting depositions and the accompanying order of protection, allege facts establishing, if true, every element of the offense charged. (People v Alejandro, 70 NY2d 133 [1987].) In essence, the defendant argued that the order of protection issued in favor of members of the Mountain Rotty Rescue group exceeded the scope permitted by CPL 530.13 (1) and that the People therefore failed to alleged facts establishing that the defendant violated a lawful mandate of the court as required by the criminal contempt statute. The People argued that the designation of the Mountain Rotty Rescue group as the protected party was proper.
Section 530.13 (1) of the CPL permits a criminal court to issue a temporary order of protection as a condition of the defendant’s pretrial release on recognizance or bail. The statute provides, in relevant part, that
“[i]n addition to any other conditions, such an order may require that the defendant:
“(a) stay away from the home, school, business or place of employment of the victims of, or designated witnesses to, the alleged offense;
“(b) refrain from harassing, intimidating, threatening or otherwise interfering with the victims of the alleged offense and such members of the family or *618 household of such victims or designated witnesses as shall be specifically named by the court in such order.”
No reported cases address the validity of a temporary order of protection issued in favor of a party who was not a victim, designated witness or the member of a family or household of a victim or designated witness.
Decisions concerning final orders of protection issued pursuant to CPL 530.13 (4) offer guidance. Upon conviction of an offense, section 530.13 (4) permits a criminal court to issue a final order of protection to the victims and their families or households and to designated witnesses. The language used in section 530.13 (4) (a) and (b) is virtually identical to the language quoted above.*
A series of appellate-level cases has vacated final orders of protection issued in favor of parties not designated in section 530.13 (4). In People v Raduns (70 AD3d 1355 [4th Dept 2010]), the Appellate Division held that the trial court had no authority to issue an order of protection in favor of parties who were neither victims nor witnesses to the crime underlying the conviction. The Appellate Division has further held that the term “witnesses,” as used in the statute, is limited to only those people who actually witnessed the offense in question, and does not include all witnesses who testified at the defendant’s trial. (People v Somerville, 72 AD3d 1285, 1288 [3d Dept 2010].) In People v Shultis, the Appellate Division vacated a final order of protection issued pursuant to CPL 530.13 (4) that directed a defendant to avoid contact with “all individuals under the age of 18.” (61 AD3d 1116, 1118 [3d Dept 2009].) The Court found that the order was over broad as it covered individuals unrelated to the underlying criminal action. (Id.) Finally, in People v Collier (35 AD3d 1037, 1038-1039 [3d Dept 2006], revd on other grounds 9 NY3d 908 [2007]), the Court vacated orders of protection issued to persons outside categories listed in CPL 530.13 (4) (b). (See also People v Petrusch, 306 AD2d 889 [4th Dept 2003] [vacating order of protection issued in favor of party not covered by CPL 530.12 (5)]; People v Creighton, 298 AD2d *619 774, 776 [3d Dept 2002] [orders of protection issued to witness of unrelated crime and to family member not specifically named by court were invalid]; cf. People v Trombley, 91 AD3d 1197 [3d Dept 2012] [guilty plea and waiver of right to appeal waives defendant’s right to challenge validity of a condition contained in an order of protection underlying a criminal contempt conviction].) Because the statute authorizing temporary orders of protection (CPL 530.13 [1]) uses language virtually identical to the language scrutinized in these final-order-of-protection cases, these Appellate Division decisions provide a strong indication that the parties who may be protected by temporary orders of protection are similarly limited.
In People v Smith (4 Misc 3d 909 [Crim Ct, NY County 2004]), a New York City Criminal Court considered whether a temporary order of protection issued pursuant to CPL 530.13 could lawfully prohibit the defendant from going to a place not related to either victims or witnesses in the case and whether the violation of such order could be prosecuted as a criminal contempt under Penal Law § 215.50 (3). The court held that a temporary order of protection could not validly be issued in favor of a place and that the order of protection was not a lawful mandate of a court. The criminal contempt charge was dismissed at trial for the prosecution’s failure to establish a prima facie case. (Id. at 913; but see People v Martin, 15 Misc 3d 1101[A], 2007 NY Slip Op 50452[U] [Hastings-on-Hudson Just Ct 2007] [holding that a defendant may not collaterally attack an order of protection in a criminal contempt prosecution].)
I find that an order of protection issued in favor of a party not designated in CPL 530.13 (1) is not a lawful court mandate and cannot support a prosecution for criminal contempt under Penal Law § 215.50 (3). A trial court’s authority to issue a temporary order of protection is statutorily created and should be limited by the specific language of the statute. While not limiting the arraigning court’s authority to set “any other conditions” for release on recognizance or bail, CPL 530.13 (1) authorizes the issuance of an order of protection in favor of certain delineated parties only. Violations of other conditions may constitute a basis for revocation of the defendant’s release pursuant to CPL 530.60, but cannot form the basis of a penal law contempt prosecution. (See People v Smith, 4 Misc 3d at 913.)
The temporary order of protection issued in the present case in favor of “the Mountain Rotty Rescue organization and their *620 agents” was outside the scope permitted by CPL 530.13. There is no indication that any members of the rescue organization or their agents had been either victims or witnesses to the charges contained in the superceding information. The order as drafted covered a constantly changing roster of animal-aid workers apparently having no involvement with the underlying charges. The order offered protection to prospective parties who would carry out the town court’s order on future occasions, rather than protection to past victims or witnesses as contemplated by the statute. Because the order of protection was not a lawful mandate by the town court, the defendant’s motion to dismiss the criminal contempt charge was granted.

 Section 530.13 (4) (a) directs the defendant to “stay away from the home, school, business or place of employment of the victim or victims, or of any witness designated by the court, of such offense” (emphasis added). Paragraph (b) provides protection to the “victim or victims of the offense and such members of the family or household of such victim or victims as shall be specifically named by the court in such order” (emphasis added). It is not clear if the omission of “designated witnesses” from subdivision (b) was intentional.